UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-22962-CIV-BECERRA/TORRES

CHARLIE LANZA, as personal representative
of the estate of RAFAEL SANCHEZ,

    *Plaintiff*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

# REPORT AND RECOMMENDATION ON
# DEFENDANT'S MOTION TO DISMISS

This cause comes before the Court on Defendant, the City of Miami's ("the City") Motion to Dismiss Plaintiff's Complaint. [D.E. 9]. Plaintiff has timely responded to the Motion [D.E. 23], to which the City has timely replied. [D.E. 28]. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, we recommend that the City's Motion be **GRANTED**.

---

[1] On November 7, 2024, the Honorable Jacqueline Becerra referred this Motion to the Undersigned Magistrate Judge for a Report and Recommendation. [D.E. 33].

1

## I.   BACKGROUND

Plaintiff, the personal representative of Rafael Sanchez's estate, filed this action after Mr. Sanchez died in police custody. Specifically, on the afternoon of August 3, 2022, City of Miami police officers arrested Mr. Sanchez for robbery. Later that evening, Mr. Sanchez was transported to the City of Miami Police Department for interrogation. While alone in the interrogation room, Mr. Sanchez ingested methamphetamine. When officers witnessed Mr. Sanchez's reaction to the substance, they called emergency services. Mr. Sanchez was transported to Jackson Memorial Hospital, but he died from "Acute Methamphetamine Toxicity."

Despite his self-ingestion of a dangerous stimulant, Plaintiff brought a two-count Complaint: (1) a 42 U.S.C. § 1983 claim, and (2) a state law wrongful death claim. As to the § 1983 claim, Plaintiff alleges that the City deprived Mr. Sanchez of his constitutional rights—namely the Fourth and Fourteenth Amendments—by failing "to act or promulgate sufficient policies or procedures to ensure the proper search, seizure, and monitoring of citizens being taken into custody …." [D.E. 1 at ¶ 22]. As to the wrongful death action, Plaintiff alleges that the City had a duty to ensure Mr. Sanchez's safety while he was in police custody, and breached that duty by failing to properly search him, monitor him, and provide appropriate medical assistance.

In the pending Motion, the City seeks to dismiss the Complaint with prejudice. The City asserts a variety of arguments, including that: Plaintiff has employed a

shotgun pleading; Plaintiff has not plausibly identified a constitutional deprivation; sovereign immunity bars the wrongful death claim; and the wrongful conduct doctrine bars the wrongful death claim.

## II. APPLICABLE LAW AND PRINCIPLES

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

The Court will first assess the City's arguments to dismiss Plaintiff's § 1983 claim before evaluating whether the wrongful death claim should be dismissed.

#### A.   *Section 1983 Claim*

Plaintiff's § 1983 claim alleges that, by failing to promulgate sufficient search and seizure policies, and by failing to promulgate sufficient policies to ensure that detainees in custody are monitored, the City violated Mr. Sanchez's Fourth and Fourteenth Amendment rights. Notably, Plaintiff has not sued any individual officer, choosing instead to sue the City.

The City, in turn, levies several arguments as to why the § 1983 claim should be dismissed with prejudice. Specifically, the City argues that Plaintiff has relied on a deficient shotgun pleading, and Plaintiff has not plausibly alleged a constitutional deprivation sufficient to sustain a § 1983 claim.

Beginning with the shotgun pleading theory, the City argues that Plaintiff's Section 1983 claim comingles two theories of alleged constitutional violations into one count. In response, Plaintiff argues that it "clearly articulates Plaintiff's theory of liability," but does not explain what that theory of liability is or how it is clearly articulated. [D.E. 23 at 3].

"Shotgun pleadings are characterized [in part] by … failing to separate each cause of action or claim for relief into distinct counts." *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)).  When such a pleading is filed, a court should exercise its Rule-based and inherent power to remedy the failure to comply with Fed. R. Civ. P. 8(a)(2). *See, e.g., Fikes v. City of Daphne,* 79 F.3d 1079, 1082 (11th Cir. 1996) (vacating final dismissal of section 1983 claims that failed to satisfy Rule and directing trial courts to order properly pleaded claims; "One has to guess at the number of claims for relief appellant attempted to state in counts three and four. By combining several claims for relief in each count, appellant disregarded the rules governing the presentation of claims to a district court.").

Here, we agree with the City that the claim is impermissibly intermingled and therefore dismissal is appropriate. Plaintiff alleges that "City of Miami police officers … while arresting Decedent in furtherance of their duties, caused a constitutional deprivation of Decedent, namely the violation of the Fourth and Fourteenth Amendments." [D.E. 1 at ¶ 21]. Plaintiff then alleges that the City "failed to act or promulgate sufficient policies or procedures to ensure the proper search, seizure, and

monitoring of citizens being taken into custody, and the failure to do so resulted in the death of Decedent." [*Id*. at ¶ 22].

Those allegations (apart from being conclusory) fail to discern what constituted a Fourth Amendment violation as opposed to a Fourteenth Amendment violation. These are two different legal principles, with different elements and different burdens. Accordingly, because the claim combines two constitutional violations into one claim, the claim should be dismissed. *See Murray v. Governor, Fla.*, No. 24-10583, 2024 WL 4490325, at *3 (11th Cir. Oct. 15, 2024) (quoting *Weiland*, 792 F.3d at 1320) ("The district court did not abuse its discretion in dismissing Murray's complaint as a shotgun pleading. First, Counts 1, 2, 9, and 10 each allege violations of multiple constitutional provisions. Those counts thus fit neatly within the category of shotgun pleadings that do not 'separat[e] into a different count each cause of action.'"); *Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2021 WL 681291, at *11 (S.D. Fla. Feb. 17, 2021) (citing *Weiland*, 792 F.3d at 1323) (granting motion to dismiss "because Count Sixteen alleges multiple claims within a single count," and therefore "it is an impermissible shotgun pleading"); *Doe v. Pierce Cnty., Georgia*, No. 5:19-CV-0005, 2019 WL 1937577, at *3 (S.D. Ga. May 1, 2019) ("Count IV is labeled '42 U.S.C. § 1983 - Violation of Plaintiff's Fourteenth Amendment Rights Under the United State [sic] Constitution.' This Count includes claims for not protecting inmates 'which shows a reckless disregard of proper law enforcement procedures which shocks the conscience,' deliberate indifference, and supervisory and/or municipal liability for policies or customs that violated the Plaintiff's constitutional rights. These poorly

6

organized counts make it difficult for Defendants to be on notice of what specific causes of action are being pursued against them with respect to which count in the Complaint."); *Arroyo v. Judd*, No. 810CV911T23TBM, 2010 WL 2465173, at *2 (M.D. Fla. June 15, 2010) (granting motion to dismiss because "[t]he plaintiff consolidates every alleged constitutional violation into a single count, 'Count I,' which incorporates the previous allegations in the complaint. The complaint typifies a deficient and impermissible method of pleading.").

The claim should be dismissed without prejudice, to allow the Plaintiff opportunity to sufficiently put the City on notice as to *how* it ostensibly violated either the Fourth Amendment and/or separately the Fourteenth Amendment.[2]

---

[2] Because the Court finds that Count I should be dismissed on grounds that it is a shotgun pleading, the Court need not reach the City's additional merits argument that Plaintiff failed to plausibly allege a predicate constitutional injury. We will not know that, in the first place, unless Plaintiff properly alleges a discrete constitutional claim(s). We note, however, that the City's points are well taken. *See, e.g., Smith v. City of Johns Creek,* No. 24-10815, 2025 WL 313165, at *3 (11th Cir. Jan. 28, 2025) ("A governmental entity 'cannot be held liable solely because it employs a tortfeasor.' . . . Instead, it is only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Although a municipality can be held liable under § 1983 for a "policy or custom-based failure to adequately train or supervise its employees," a plaintiff must allege specific and plausible facts indicating that the city was aware of particular risks and the need to train or supervise its employees to address those risks before the incident giving rise to his complaint. *See Plowright v. Miami Dade Cnty.,* 102 F.4th 1358, 1370 (11th Cir. 2024). Plus, cases involving self-harm to detainees must further include claims that jail officials displayed "deliberate indifference to the prisoner's taking of his own life." *Edwards v. Gilbert,* 867 F.2d 1271, 1274-75 (11th Cir. 1989) (quotation omitted); *Snow ex rel. Snow v. City of Citronelle,* 420 F.3d 1262, 1268 (11th Cir. 2005) ("To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence.").

7

B.     *Wrongful Death Claim*

Plaintiff's state law wrongful death claim asserts that, essentially, the City breached a multitude of duties that include: "fail[ure] to use reasonable care when detaining and searching Decedent," "fail[ure] to properly monitor Decedent," "fail[ure] to provide appropriate medical assessments and assistance," and "failu[re] to use reasonable care to ensure Decedent's safety and well-being while in custody." [D.E. 1 at ¶ 26].

The City seeks to dismiss this claim on two grounds: first, that the claim is barred by the "wrongful conduct doctrine," and second, that it is barred by sovereign immunity.

On the wrongful conduct score, the City argues that Mr. Sanchez's death was caused by voluntarily ingesting an illegal drug. Consequently, because (by the plain terms of the Complaint) Mr. Sanchez's own illegal conduct caused his death, any wrongful death claim is precluded by the "wrongful conduct doctrine."

In response, Plaintiff does not meaningfully confront why this "wrongful conduct doctrine" should not apply. Rather, Plaintiff emphasizes that regardless of whether Mr. Sanchez died from methamphetamine, the City still breached its duty to monitor him and ensure his safety and thus contributed to his death.

"Under the wrongful conduct doctrine, a plaintiff is prohibited from bringing a claim to recover for his injuries based on his own illegal conduct." *Jacobson v. Pfizer, Inc.*, 618 F. App'x 509, 511 (11th Cir. 2015) (citing *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So.2d 452, 454–55 (Fla. 4th DCA 2007)). The doctrine is grounded, per the

8

Florida Supreme Court, on the "fundamental equitable principle that 'no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime.'" *Ashwood v. Patterson*, 49 So. 2d 848, 850 (Fla. 1951).

Here, the plain allegations of the Complaint suggest that Mr. Sanchez's death was caused not by the City, but by Mr. Sanchez's ingestion of methamphetamine. Indeed, the Complaint does not allege that any inordinate amount of time passed between (1) Mr. Sanchez having a visible reaction to the methamphetamine, and (2) emergency services being called. Mr. Sanchez arrived at the police station at 8:09 PM, and emergency services were called at 9:49 PM. Plaintiff does not even allege that the City unduly hesitated to call the police, observed Mr. Sanchez having a visceral reaction and refused to act, or had knowledge of Mr. Sanchez's drug possession. Even taking all allegations as true, Mr. Sanchez's death was caused, according to the face of this complaint, not by the City, but by his decision to ingest methamphetamine. Absent some other facts that give rise to a plausible independent cause of death, this claim cannot survive.

But we need not hinge our holding on the "wrongful conduct doctrine." Rather, Plaintiff's claim should be dismissed more simply because it does not plausibly allege causation. Plaintiff avers in conclusory fashion that the City had a duty of reasonable care and breached that duty. But while Plaintiff vaguely alleges *that* the City breached its duty to monitor Plaintiff, it alleges no underlying facts as to *how* the City breached its duty (e.g., in what way the City failed to reasonably react to Mr.

9

Sanchez's medical emergency). The Complaint then fails to allege that the City's ostensible breaches had a causal relationship with Mr. Sanchez's death. Indeed, the allegations before us present a story that Mr. Sanchez was brought to the station at 8:09 PM, ingested meth, and by 9:49 PM the officers called an ambulance and transported him to a hospital. Even liberally construed, the Complaint does not link vague allegations of the City's breaches with the events preceding Mr. Sanchez's death.

In fact, Plaintiff's only allegation that the City caused Plaintiff's death is indisputably conclusory (i.e., "[a]s a direct and proximate result of [the City's] breach of the aforementioned duties to use reasonable care … Decedent died on August 3, 2022"). [D.E. 1 at ¶ 27]. Without any factual allegations as to how the City breached its duties and how those breaches caused Mr. Sanchez's death, which are essential elements of a wrongful death action, this claim must be dismissed as implausible. *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."); *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1242 (S.D. Fla. 2010) (granting motion to dismiss negligence claim because "[n]othing in the Amended Complaint indicate[d] how Plaintiff was injured because of the [defendant's alleged] failures"); *Blake v. Seterus, Inc.*, No. 16-21225-CIV, 2016 WL 4767551, at *2 (S.D. Fla. Sept. 13, 2016) (granting motion to dismiss because "[t]o establish causation, Plaintiff must allege *facts* showing that but for Defendant's wrongful conduct" he would not have suffered injury) (emphasis in

original); *Rounds v. Genzyme Corp.*, No. 8:10-CV-2479-T-23, 2011 WL 692218, at *2 (M.D. Fla. Feb. 18, 2011), *aff'd*, 440 F. App'x 753 (11th Cir. 2011) (granting motion to dismiss negligence claim because "the defendant again persuasively argues that the amended complaint lacks a pertinent and necessary factual allegation supporting causation").

Accordingly, we recommend that Count II should be dismissed. We further recommend, however, that Count II be dismissed without prejudice; it is conceivable that Plaintiff could allege additional, related yet unknown but specific facts that plausibly suggest the City caused Mr. Sanchez's death (e.g., a negligently delayed effort in calling an ambulance, prior knowledge that Mr. Sanchez had methamphetamine, or a negligent refusal to act after knowing Plaintiff was experiencing a fatal reaction). *Cf. Stalley v. Cumbie*, No. 5:19-CV-280-OC-30PRL, 2019 WL 13037191, at *3 (M.D. Fla. Sept. 13, 2019) (finding that the plaintiff plausibly alleged a wrongful death claim where the plaintiff alleged "that the C.O.s breached their duty to use reasonable care by (1) failing to get timely medical assistance for Villegas and (2) failing to ensure Villegas's safety, given the K-2 epidemic and Villegas's symptoms of a K-2 overdose").[3]

---

[3] Because the Court finds that Claim II should be dismissed for failure to state a claim, the Court need not yet reach the City's defense that sovereign immunity should apply. Again, we cannot reach that defense without a properly pleaded claim in the first instance. We note, however, that any amended claim must take note of the pleading requirements that are essential to bypass this defense at the pleading stage.

11

### IV. CONCLUSION

For the reasons set forth above, we recommend that the City's Motion to Dismiss [D.E. 9] be **GRANTED**, and that both Count I and Count II of Plaintiff's Complaint [D.E. 1] be **dismissed without prejudice.**

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 11th day of February, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge